# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ILIOS PRODUCTION DESIGN, LLC,<br>*Plaintiff* | § § § § | |
| v. | § § | |
| THE CINCINNATI INSURANCE<br>COMPANY, INC.; THE CINCINNATI<br>CASUALTY COMPANY, INC.; AND<br>THE CINCINNATI INDEMNITY<br>COMPANY, INC.,<br>*Defendants* | § § § § § | **Case No. 1:20-CV-857-LY** |

## <u>REPORT AND RECOMMENDATION</u>
## <u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Second Motion to Dismiss and Memorandum of Support, filed January 19, 2021 (Dkt. 35); Plaintiff's Response, filed February 22, 2021 (Dkt. 44); and Defendants' Reply, filed February 26, 2021 (Dkt. 46). On March 3, 2021, the District Court referred Defendants' motion to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.    Background

On July 8, 2020, Plaintiff ILIOS Production Design, LLC, a Texas limited liability company, filed this insurance coverage lawsuit against its insurer, The Cincinnati Insurance Company, Inc., The Cincinnati Casualty Company, Inc., and the Cincinnati Indemnity Company, Inc., Ohio corporations (collectively, "Cincinnati"). A summary of the allegations contained in Plaintiff's Original Petition follows. Dkt. 1-1.

Plaintiff, a Texas limited liability company, is a provider of lighting and production design services for live concerts and music productions, weddings, corporate conventions, and various other broadcast events. Plaintiff's headquarters are at 4009 Commercial Center Dr., Austin, Texas 78744-1088. On August 28, 2020, Cincinnati issued Plaintiff a commercial property insurance policy covering Plaintiff's property from August 20, 2018 to August 20, 2021 (the "Policy"). *Id.* ¶¶ 7-8. The Policy generally provides coverage for direct losses to Plaintiff's property and business personal property, with specified exclusions. Dkt. 35-2 at 3-4. The Policy also provides coverage to Plaintiff for loss of business income and extra expenses (commonly referred to as "business interruption losses") during necessary suspension of its operations during a "period of restoration" caused by a "direct loss" to its property. *Id.* at 18. The Policy further provides coverage to Plaintiff for loss of business income and extra expenses sustained when "a Covered Cause of Loss causes damage to property other than Covered Property" that was "caused by action of civil authority that prohibits access to the 'premises.'" *Id.* at 19.

On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a global pandemic. Dkt. 1-1 at ¶ 20. Shortly thereafter, the Centers for Disease Control and Prevention issued guidance on slowing the spread of the virus, including advising the public to observe social distancing and avoid large gatherings. *Id.* ¶ 27. State and local governments issued many orders to protect public health by limiting the spread of COVID-19, including orders limiting gatherings and restricting operation of non-essential businesses. For example, on March 24, 2020, Travis County and the City of Austin issued "Stay at Home or Place of Residence" orders ordering all non-essential businesses to immediately cease operations in the City of Austin and Travis County and prohibiting all public and private gatherings outside of a single household. *Id.* ¶ 31. On March 31, 2020, the Governor of Texas issued an Executive Order closing schools and ordered

the public to limit social gatherings and minimize in-person contact with people not in the same household. *Id.* ¶ 32.

As a result of these civil authority orders, Plaintiff alleges that it was forced to close its non-essential business on March 24, 2020 "and remained closed until a limited re-opening on June 26, 2020." *Id.* 45. Plaintiff alleges that it has incurred "a substantial loss of business income and additional expenses covered under the Policy," and submitted a claim to Cincinnati to recover for those losses. *Id.* 46. Plaintiff argues that it "suffered direct physical loss to the use of their premises . . . as a result of both the global Coronavirus pandemic (COVID-19) and Civil Authority orders issued by governmental entities rendering said premises temporarily uninhabitable and/or unusable for their respective business operations." Dkt. 44 at 3.

On April 20, 2020, Cincinnati denied Plaintiff's claim, contending that the losses were not covered under the Policy because "[t]he claim does not involve direct, physical loss to property at your premises caused by a Covered Cause of Loss." Dkt. 1-1 at 14. In addition, Cincinnati noted that even if there were a direct physical loss, coverage would be excluded under the Policy's pollution exclusion provision. *Id.* at 17-18.[1] In response, Plaintiff filed suit, alleging breach of contract, common-law bad faith, and violations of the Texas Insurance Code, including unfair settlement practices, misrepresentation, and failure to promptly pay Plaintiff's claims.

On August 17, 2020, Cincinnati removed the case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1441(b). Cincinnati then filed a Motion to Dismiss (Dkt. 3), arguing that the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the Policy provides coverage only for direct physical loss or damage to property but Plaintiff has not sustained any direct physical loss or damage to its property. Dkt. 1.

---

[1] Defendant appears to have abandoned this argument.

On December 7, 2020, Plaintiff filed an Opposed Motion for Leave to File First Amended Complaint, seeking leave to add as a defendant Jonathan Malish, a Texas licensed adjuster, and to add a civil conspiracy claim against all defendants. Dkt. 19. The District Court granted Plaintiff's Opposed Motion for Leave and dismissed Cincinnati's Motion to Dismiss without prejudice. Dkt. 30. Cincinnati then filed a Motion to Reconsider the District Court's Order granting Plaintiff Leave to File First Amended Complaint, arguing that Plaintiff was attempting to defeat diversity jurisdiction. Dkt. 36. On January 29, 2021, the District Court granted the Motion to Reconsider, vacated its Order granting Plaintiff's Motion for Leave, and ordered that Plaintiff's First Amended Complaint be stricken from the record. Dkt. 38. Therefore, the "live" complaint in this case is Plaintiff's Original Petition.

Ten days before the District Court struck Plaintiff's First Amended Complaint, Cincinnati filed its Second Motion to Dismiss, arguing once again that Plaintiff's lawsuit should be dismissed under Rule 12(b)(6) because Plaintiff has not sustained any direct physical loss or damage to its property but the Policy provides coverage only for such losses. Plaintiff opposes the Motion and contends that its loss of business income due to the COVID-19 pandemic is a covered loss under the Policy.[2] The Court makes the following recommendations.

## II.   Legal Standards

The Court applies the following standards to the Motion to Dismiss.

## A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for

---

[2] Although the live complaint in this case is Plaintiff's Original Petition, Defendant mistakenly refers to Plaintiff's Amended Complaint in its pleadings. *See* Dkt. 46 at 10 (seeking to dismiss Plaintiff's civil conspiracy claim alleged in its Amended Complaint).

failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**B. Texas Insurance Law**

The parties agree that Texas law governs this diversity action.[3] "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). Unless the policy dictates otherwise, courts give words and phrases their ordinary and

---

[3] In a diversity action, federal courts are bound to apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court must apply Texas law in this case.

generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). "The paramount rule is that courts enforce unambiguous policies as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). If policy language can be given a definite or certain legal meaning, it is not ambiguous, and courts construe it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Pan Am*, 959 F.3d at 674 ("If an insurance contract, just like any other contract, uses unambiguous language, that's that.").

> [U]nder Texas contract law, "ambiguity" means more than "lack of clarity." A policy is not ambiguous merely because different parties —or different judges—offer conflicting interpretations. . . . A policy is only ambiguous if, giving effect to all provisions, its language is subject to two or more reasonable interpretations.

*Id.* If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. *Id.*

### III.     Analysis

Plaintiff alleges that Cincinnati breached the insurance agreement by failing to pay Plaintiff for economic losses it sustained during the COVID-19 pandemic. Plaintiff also sues Cincinnati for breach of the common-law duty of good faith and fair dealing, and for violations of the Texas Insurance Code, including unfair settlement practices, misrepresentation, and failure to promptly pay its claims. Cincinnati argues that all of Plaintiff's claims should be dismissed because Plaintiff's business interruption losses due to the temporary closure of its business during the COVID-19 pandemic are not covered under the Policy.

A.  **Breach of Contract**

Plaintiff alleges that Cincinnati breached the insurance agreement by failing to pay for economic losses it sustained during the COVID-19 pandemic. Plaintiff argues that the COVID-19 pandemic and the civil authority orders requiring it to temporarily close its business caused it to suffer a "direct physical loss to the use of their premises." Dkt. 44 at 4. Plaintiff alleges that "COVID-19 is said to attach to physical surfaces and is known to spread through the air," and that "it was probable that Plaintiff's customers and employees brought COVID-19 onto Plaintiff's premises and spread COVID-19 across Plaintiff's property." *Id.* Plaintiff contends that the civil authority orders "rendered Plaintiff's Property unsafe and unusable; thereby, implicating the coverage for which Plaintiff has made regular and timely premium payments." *Id.*

Cincinnati argues that the Policy covers only a "direct physical loss to property" or loss of income related to damage to property, such as by a fire or storm, and does not cover economic loss caused by a virus or efforts to protect the public from that virus. Dkt. 35 at 1. Cincinnati contends that COVID-19 "does not damage property; it hurts people." *Id.* Cincinnati contends that the virus does not physically alter property, and, therefore, cannot constitute a direct physical loss to property under the Policy. Cincinnati argues that Plaintiff is attempting to recover for purely economic losses and loss of use alone which are not covered under the Policy.

1.  **No Coverage under the Business Income and Extra Expense Provision**

The Business Income and Extra Expense Coverage Form provides, in relevant part:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at "premises" caused by or resulting from and Covered Cause of Loss.

Dkt. 35-2 at 18. "Loss" is defined as "accidental physical loss or accidental physical damage." *Id.* at 38. In other words, to trigger coverage under this provision, Plaintiff must show that there was

a suspension of business operations stemming from a direct accidental physical loss or accidental physical damage to its Property. *Id.*

The parties dispute the meaning of the phrase direct "physical loss to property," with Plaintiff insisting the phrase is ambiguous. The Policy does not define "physical loss." Cincinnati argues that a direct physical loss requires a "distinct, demonstrable, physical alteration of the property" under state law. Dkt. 35 at 6. Plaintiff disagrees, and argues that the term "physical loss" includes the loss of use or access to covered property even where that property has not been structurally altered. Plaintiff contends that "[t]he proliferation of COVID-19 and the governmental response to the health threat it presents and consumer fear of COVID-19 have both directly caused the direct physical loss of the insured's business and loss of business income." Dkt. 44 at 11. Plaintiff argues that "Plaintiff's inability to fully operate—both at its own premises and that of its clients who have also been forced to cancel events for which Plaintiff was contracted to provide services—including their loss of use—fit comfortably within the broad dictionary definition of 'loss.'" *Id.* Thus, Plaintiff contends that its "inability to fully physically operate is a *physical loss*" covered under the Policy. *Id.*

A provision is not ambiguous merely because "the parties to a lawsuit offer conflicting interpretations of the contract's provisions." *Nassar*, 508 S.W.3d at 258. If only one interpretation of a provision is reasonable under the circumstances, the provision is unambiguous. *Id.* A provision ambiguous and construed in favor of the insured only if the parties identify different, reasonable interpretations. *Id.*

The Court finds that the term "physical loss" is not ambiguous. Plaintiff's interpretation is not reasonable because it focuses on "physical loss" alone while ignoring the Policy's unambiguous requirement that there must be a direct physical loss to Plaintiff's "property" in order to trigger

coverage. Dkt. 35-2 at 18. Notably, the Policy is a commercial property insurance policy insuring

Plaintiff's buildings, business personal property in or around those buildings, and loss of income

from losses to that property. Although the Policy does not define physical loss, the Fifth Circuit

has stated that "property insurance coverage is triggered by some threshold concept of physical

loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas

Co.*, 181 F. App'x 465, 470 (5th Cir. 2006).

> The requirement that the loss be "physical," given the ordinary
> definition of that term is widely held to exclude alleged losses that
> are intangible or incorporeal, and, thereby, to preclude any claim
> against the property insurer when the insured merely suffers a
> detrimental economic impact unaccompanied by a distinct,
> demonstrable, physical alteration of the property.

*Id.* (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2005)).

In order to trigger coverage under a commercial property policy, "physical loss" requires some

"distinct, demonstrable, physical alteration of the property," not a merely economic losses. *Ross

v. Hartford Lloyd Ins. Co.*, No. 4:18-CV-00541-O, 2019 WL 2929761, at *6 (N.D. Tex. July 4,

2019) (quoting 10A COUCH ON INS. § 148:46 (3d ed. 2010)); *see also Trinity Indus., Inc. v. Ins.

Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990) ("The language 'physical loss or damage'

strongly implies that there was an initial satisfactory state that was changed by some external event

into an unsatisfactory state—for example, the car was undamaged before the collision dented the

bumper.").

Although the Fifth Circuit has yet to address whether the COVID-19 pandemic and related

civil authority orders can qualify as a physical loss of or damage to property under property

insurance policies, district courts in this Circuit have determined that they do not. In *Diesel

Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353 (W.D. Tex. 2020), owners of several

barbershops sought coverage under their insurance policies for business interruption losses due to

the COVID-19 pandemic and related civil authority orders. While Senior District Court Judge Ezra

acknowledged that some courts outside the Fifth Circuit "have found physical loss even without

tangible destruction to the covered property," such as when a noxious odor permeated a building

causing it to become uninhabitable, the district court stated that, "within our Circuit, the loss needs

to have been a 'distinct, demonstrable, physical alteration of the property.'" *Id.* at 359-60 (quoting

*Hartford*, 181 F. App'x at 470). The court found that COVID-19 does not produce a direct physical

loss to property like "a noxious odor that makes a business uninhabitable"; therefore, the plaintiffs

failed to plead "a direct physical loss" to property to trigger coverage. *Id.* at 360.

Similarly, in *Steiner Steakhouse, LLC v. Amco Ins. Co.*, No. 1:20-CV-858-LY, 2020 WL

8879041, at *4 (W.D. Tex. Dec. 30, 2020), the District Court found that a commercial property

insurance policy did not cover business interruption losses the plaintiff restaurant sustained during

the COVID-19 pandemic. Although the insurance policy did not define "physical loss or damage

to property," the District Court found that the phrase was not ambiguous and "has a legally

established meaning—a 'distinct, demonstrable, physical alteration of the property.'" *Id.* at 3. The

District Court reasoned:

> there is no coverage for "direct physical loss of or damage to property" because there is no "distinct, demonstrable, physical alteration of the property." Although Steiner Steakhouse may have suffered monetary losses, consumers may have avoided Steiner Steakhouse out of fear, and levers of government may have suspended Steiner Steakhouse's indoor dining business, none of these theories of recovery articulate a physical loss that is cognizable in Texas.
>
> ***
>
> Steiner Steakhouse's claim that consumers stayed away of their own volition, or in obedience to government orders, causing it to lose business income, does not qualify as "physical loss or damage" in Texas. Thus, there is no coverage under this provision.

*Id.* at 4.

Likewise, in *Sultan Hajer d/b/a Rug Outlet v. Ohio Sec. Ins. Co.*, --- F. Supp. 3d ----, 2020 WL 7211636, at *2 (E.D. Tex. Dec. 7, 2020), the Eastern District of Texas rejected the plaintiff's argument that its business interruption losses incurred during the COVID-19 shutdown of non-essential businesses constituted a "direct physical loss of or damage to property" under the property insurance policy. Like Plaintiff here, the plaintiff argued that because the policy did not define "direct physical loss," the term was ambiguous and should include the plaintiff's "inability to have his Property safely fully operated and occupied." *Id.* The court disagreed, reasoning that "[t]he scope of the term 'physical loss' is far narrower than plaintiff contends and is only reasonably read in context as meaning 'a distinct, demonstrable, physical alteration of the property.'" *Id.* (quoting *Hartford*, 181 F. App'x at 470). Because the plaintiff had suffered only economic damages and had not alleged any tangible damage or loss to his store, his claim was not covered under the terms of the policy. *Id.* at 3; *see also Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-00087-KS-MTP, --- F. Supp. 3d ----, 2020 WL 6503405, at *3 (S.D. Miss. Nov. 4, 2020) (holding that plaintiff's business interruption losses due to the COVID-19 pandemic were not covered under policy where property was not damaged and plaintiff was not permanently dispossessed of any insured property); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, No. 5:20-cv-00680-OLG, --- F. Supp. 3d ----, 2020 WL 6578417, at *6 (W.D. Tex. Oct. 26, 2020) (noting that "in recent months, numerous courts—including at least one court in this District and Division— have held that the lost *use* of a property due to the Covid-19 pandemic and/or government shutdown orders did not constitute 'direct physical loss of' a property such that it may be the basis for a claim for loss of business income").[4]

---

[4] The great majority of courts outside the Fifth Circuit also have held that COVID-19 and related civil authority shutdown orders do not constitute a direct physical loss of property under similar insurance policies. *See Promotional Headwear Int'l. v. Cincinnati Ins. Co.*, No. 20-CV-2211-JAR-GEB, --- F. Supp. 3d ----, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020), *appeal docketed*, No. 20-3594 (10th Cir. Jan. 4,

The Court likewise finds that accidental direct physical loss is an unambiguous term that requires a "distinct, demonstrable, physical alteration" of Plaintiff's property to trigger coverage. *See Steiner Steakhouse*, 2020 WL 8879041, at \*3 (finding that "direct physical loss" is not ambiguous and requires a "distinct, demonstrable, physical alteration of the property"); *Sandy Point Dental,* 488 F. Supp. 3d at 693 (finding that "direct physical loss" under similar policy issued by Cincinnati "unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage"). As the Eastern District of Michigan stated, "the plain meaning of 'direct physical loss to Covered Property' requires that there be a loss to Covered Property; and not just any loss, a direct physical loss." *Turek Enters.*, 484 F. Supp. 3d at 501.

Although Plaintiff argues that its inability to use its property constitutes a direct physical loss, the civil authority orders did not cause any tangible alteration to Plaintiff's property; rather, Plaintiff was temporarily precluded from operating its business while the orders were in effect. *See Hillcrest Optical,* 2020 WL 6163142, at \*7 (holding that plaintiff failed to show tangible loss to

---

2021); *4431, Inc. v. Cincinnati Ins. Co.*, No. 5:20-CV-04396, --- F. Supp. 3d ----, 2020 WL 7075318, at \*12 (E.D. Pa. Dec. 3, 2020), *appeal docketed*, No. 21-3000 (3rd Cir. Dec. 23, 2020); *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401, --- F. Supp. 3d ----, 2020 WL 6436948, at \*1 (S.D. W. Va. Nov. 2, 2020), *appeal docketed*, No. 21-1311 (4th Cir. Mar. 23, 2021); *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, --- F. Supp. 3d ----, 2020 WL 6392841, at \*8 (S.D. Fla. Nov. 2, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, --- F. Supp. 3d ----, 2020 WL 6163142, at \*8 (S.D. Ala. Oct. 21, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04423-AB-SK, --- F. Supp. 3d ----, 2020 WL 5938689, at \*5 (C.D. Cal. Oct. 2, 2020), *appeal docketed*, No. 20-56031 (9th Cir. Oct. 6, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at \*6 (N.D. Ga. Oct. 6, 2020), *appeal docketed*, No. 10-14156 (11th Cir. Nov. 4, 2020); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4-20-CV-222-CRW-SBJ, --- F. Supp. 3d ----, 2020 WL 5820552, at \*1 (S.D. Iowa Sept. 29, 2020), *appeal docketed*, No. 203211 (8th Cir. Oct. 21, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020), *appeal docketed*, No. 21-1186 (7th Cir. Jan. 21, 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 842-43 (N.D. Cal. Sept. 14, 2020), *appeal docketed*, No. 20-16858 (9th Cir. Sept. 24, 2020); *Turek Enters. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 501 (E.D. Mich. 2020). *But See Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 802-03 (W.D. Mo. 2020) (holding that insureds adequately alleged direct physical loss to property by alleging that COVID-19 made their businesses unsafe and unusable); *K.C. Hopps, Ltd v. Cincinnati Ins. Co.*, No. 20-CV-00437-SRB, 2020 WL 6483108, at \*1 (W.D. Mo. Aug. 12, 2020) (same).

property from government shutdown orders causing temporary closure of business). Plaintiff fails to allege that there was any demonstrable physical loss or damage to its property. In addition, Plaintiff had complete access to the premises even after the civil authority orders were issued. *See Mark's Engine Co.*, 2020 WL 5938689, at *5 (finding "that plaintiff suffered no complete 'direct physical loss of' its property as it always had complete access to the premises even after the order was issued"). Accordingly, Plaintiff has not alleged a direct physical loss to its property from the civil authority orders.

Plaintiff also argues that COVID-19 itself causes physical damage to property because "COVID-19 is said to attach to physical surfaces and is known to spread through the air." Dkt. 44 at 4. Plaintiff, however, does not allege that the virus that causes COVID-19 was ever present at its premises. *See Hajer*, 2020 WL 7211636, at *3 (finding no physical alteration to property where there was no pleading "that the virus itself was present on and altered the property"). Plaintiff merely speculates that "it was probable that Plaintiff's customers and employees brought COVID-19 onto Plaintiff's premises and spread COVID-19 across Plaintiff's property." Dkt. 44 at 4. Such conclusory allegations are insufficient to state a plausible claim that Plaintiff's property was damaged. *See Promotional Headwear*, 2020 WL 7078735, at *8 (finding plaintiff's allegation that virus likely contaminated its property failed to raise right of relief above speculative level).

Even assuming that the virus that causes COVID-19 was present at Plaintiff's property, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies and can be removed from surfaces with routine cleaning and disinfectant. *See id.*; *Uncork and Create*, 2020 WL 6436948, at *5. Plaintiff has not pled any facts showing that the coronavirus caused physical loss, harm, alteration, or structural degradation to its

property. *See Mark's Engine Co.*, 2020 WL 5938689, at \*3; *Sandy Point Dental*, 488 F. Supp. 3d

at 693. As the district court reasoned in *Uncork and Create*:

> COVID-19 poses a serious risk to people gathered in proximity to
> one another, and the governmental orders closing certain businesses
> were designed to ameliorate that risk. Property, including the
> physical location of Uncork and Create, is not physically damaged
> or rendered unusable or uninhabitable. If people could safely
> congregate anywhere without risk of infection, the Plaintiff has
> alleged no facts to suggest any impediment to Uncork and Create's
> operation. No repairs or remediation to the premises are necessary
> for its safe occupation in the event the virus is controlled and no
> longer poses a threat. In short, the pandemic impacts human health
> and human behavior, not physical structures. Those changes in
> behavior, including changes required by governmental action,
> caused the Plaintiff economic losses.

2020 WL 6436948, at \*5.

In essence, Plaintiff seeks insurance coverage for financial loss as a result of the civil authority

orders issued in response to the virus. But "a loss of money" is not the physical loss of covered

property required to trigger coverage under the Policy. *See Steiner Steakhouse,* 2020 WL 8879041,

at \*4 (finding that "loss of money" is not physical loss of covered property). Without a direct

physical loss to its property, Plaintiff is not entitled to any business interruption losses under the

Policy.

### 2.  No Civil Authority Coverage

Plaintiff also fails to demonstrate that it is entitled to business interruption losses under the

following "Civil Authority" provision:

> When a Covered Cause of Loss causes direct damage to property
> other than Covered Property at the "premises," we will pay for the
> actual loss of "Business Income" you sustain and necessary Extra
> Expense you sustain caused by action of civil authority that prohibits
> access to the "premises," provided that both of the following apply:
>
> > (a) Access to the area immediately surrounding the damaged
> > property is prohibited by civil authority as a result of the
> > damage; and

> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Dkt. 35-2 at 19. Thus, to trigger coverage under this provision, Plaintiff must show (1) damage to other property, and (2) an order of civil authority prohibiting access to the other property after the property was damaged. Plaintiff meets neither element.

Just as the COVID-19 pandemic did not cause direct physical loss to Plaintiff's property, Plaintiff fails to show that there was direct physical loss to other property. *See Sandy Point Dental*, 488 F. Supp. 3d at 694 (holding that civil authority provision did not apply where there was no physical loss to other property). Plaintiff also does not allege that the civil authority orders were issued as a result of damage or loss to other property, but contends that those orders caused the property loss. The civil authority provision "requires the physical damage to prompt the act of civil authority, not the other way around." *Hajer*, 2020 WL 7211636 at *4; *see also Steiner Steakhouse,* 2020 WL 8879041, at *5 (stating that in order to trigger civil authority coverage "the damage to property must precede the action of civil authority, which is 'taken in response to' the damage"). Moreover, while the civil authority orders limited Plaintiff's business operations, those orders did not prohibit Plaintiff from accessing its premises. *See Sandy Point Dental*, 488 F. Supp. 3d at 694 (finding that civil authority provision did not apply because plaintiff failed to allege access to its premises was prohibited by government order). Accordingly, civil authority coverage does not apply in this case.

### 3.  Lack of Virus Exclusion

Plaintiff argues that the lack of a virus exclusion provision in the Policy "undermines Defendants' attempt to rewrite its existing policies, post-loss to deny claims involving viruses." Dkt. 44 at 18. The lack of a virus exclusion provision in the Policy does not mean that Plaintiff's

claim is covered under the Policy. By its terms, an exclusion provision in an insurance policy would be triggered only if there were coverage under the Policy. The Court has determined that there is no coverage under the Policy. Thus, the presence of a virus exclusion provision or lack thereof is irrelevant. *See Mudpie*, 478 F. Supp. 3d at 844 n.9 ("Because Mudpie is not entitled to Civil Authority coverage, the Court need not consider Travelers's additional argument that the virus exclusion bars such coverage.").

Because Plaintiff has not demonstrated that its insurance claim is covered under the Policy, it has not alleged a plausible breach of contract claim. *See Vizza Wash*, 2020 WL 6578417, at *6. Therefore, Cincinnati's Motion to Dismiss should be granted with regard to Plaintiff's breach of contract claim.

## B.  Extra-Contractual Bad-Faith and Statutory Claims

Plaintiff's Texas Insurance Code and common-law breach of the duty of good faith and fair dealing claims fail because they are premised on Cincinnati's alleged failure to pay benefits under the Policy. "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015). For an insured to recover on a bad-faith insurance claim when the insurer properly has denied coverage for the claim, the insured must demonstrate that the insurer has committed an injury independent of the policy claim. *Id.*

Similarly, "an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018); *see also Primerica Life Ins. Co. v. Gross*, No. 1:15-CV-759-DAE, 2018 WL 2181101, at *8 (W.D. Tex. Mar. 27, 2018) (holding that, to show a violation of the prompt pay statute, the insurer must be liable for the claim); *Thomas v. State Farm Lloyds*, 218 F. Supp. 3d 506, 519 (N.D. Tex.

2016) (finding that insurer did not misrepresent policy where claim was not covered). In addition, misrepresentation claims under the Texas Insurance Code that are based on a party's failure to fulfill its contractual duties are more properly raised as breach of contract claims and should be dismissed. *Travelers Lloyds Ins. Co. v. Cruz Contracting of Texas, LLC*, No. 5:16-CV-759-DAE, 2017 WL 5202890, at *6 (W.D. Tex. Mar. 17, 2017).

Plaintiff has not plausibly alleged any injury independent of Cincinnati's alleged failure to pay benefits under the Policy. Because the Policy expressly excludes coverage for Plaintiff's insurance claim, Plaintiff's extra-contractual claims also fail. Accordingly, Cincinnati's Motion to Dismiss Plaintiff's extra-contractual claims also should be granted.

## C. Request to Amend

Although not entirely clear, Plaintiff appears to request an opportunity to file an amended complaint to replead its extra-contractual claims. *See* Dkt. 44 at 21. Because the Court has determined that there is no coverage for Plaintiff's losses under the clear terms of the Policy, any attempt to amend the Complaint would be futile. *See Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (stating that district court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss"). Plaintiff's request to amend therefore should be denied.

## D. Conclusion

In essence, Plaintiff seeks to recover economic damages it sustained as a result of the COVID-19 pandemic and associated civil authority orders under a commercial property insurance policy. While the Court is not unsympathetic to Plaintiff's financial losses, the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property loss or damage to their property. As the district court in *Uncork and Create* reasoned:

> COVID-19 poses a serious risk to people gathered in proximity to
> one another, and the governmental orders closing certain businesses
> were designed to ameliorate that risk.
>
> ***
>
> In short, the pandemic impacts human health and human behavior,
> not physical structures. Those changes in behavior, including
> changes required by governmental action, caused the Plaintiff
> economic losses. The Court is not unsympathetic to the situation
> facing the Plaintiff and other businesses. But the unambiguous terms
> of the Policy do not provide coverage for solely economic losses
> unaccompanied by physical property damage.

2020 WL 6436948, at *5.

## IV.    Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Second Motion to Dismiss (Dkt. 35) and **DISMISS** Plaintiff's lawsuit in its entirety. The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** any request to amend Plaintiff's Complaint.

It is **ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the Honorable Lee Yeakel.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **SIGNED** on April 12, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE